UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEGASSIE,<br><br>            Plaintiff,<br><br>        v.<br><br>RAYTHEON COMPANY EMPLOYEE BENEFITS ADMINISTRATION COMMITTEE, ADMINISTRATOR OF THE RAYTHEON COMPANY PENSION PLAN FOR SALARIED EMPLOYEES,<br><br>            Defendant. | CV 10-1850 ABC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Pending before the Court is a bench trial on the papers submitted by Plaintiff Mark Legassie ("Plaintiff") and Defendant Raytheon Company Employee Benefits Administration Committee ("Defendant").  The parties' filings include Plaintiff's Opening Trial Brief, Memorandum of Contentions of Fact and Law, and the Declaration of Mark Legassie; Defendant's Trial Brief, and the Declaration of Ched Miller and Exhibits A, B, C, and D thereto; Plaintiff's Responding Brief; and Defendant's Responding Brief, Objections, and the Supplemental Declaration of Ched Miller.  The Court found the matter appropriate for determination without a hearing and vacated the hearing date.

**I. PRELIMINARY DISCUSSION**

Plaintiff Mark Legassie is employed by the Raytheon Company ("Raytheon"). He is a participant in the Raytheon Company Pension Plan for Salaried Employees ("Plan"). Defendant is the Administrator of the Plan. In this action, Plaintiff alleges that Defendant failed to disclose certain Plan documents and/or notices to him as required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001 et seq. ("ERISA"), and he seeks statutory penalties and equitable relief for these violations.

Defendant's Opening Brief focuses solely on a purported claim for denial of benefits and does not address Plaintiff's statutory claims. Plaintiff's Opening Brief, by contrast, abandons any claim for denial of benefits and instead focuses solely on his statutory claims. Insofar as Plaintiff seeks reinstatement into the Plan and a determination of future benefits, he does so as an equitable remedy for these statutory violations. Accordingly, the Court finds it unnecessary to review Defendant's decision denying benefits because Plaintiff has asserted only statutory disclosure violations.

Notwithstanding Plaintiff's apparent abandonment of any denial-of-benefits claim, both parties characterize this matter as an administrative review of Defendant's conduct based on the administrative record, and state that the applicable standard of review is abuse of discretion. However, as noted, this not a denial-of-benefits case wherein Defendant made a discretionary decision concerning whether a participant is entitled to benefits under the Plan. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1088 (9th Cir. 1999) (en banc) (establishing standards of administrative review for denial of benefits claims). Rather, Plaintiff asserts claims that

2

Defendant failed to fulfill statutory disclosure requirements. A plan administrator has no discretion to disobey statutory requirements.

In its own research to determine the applicable procedural framework, the Court observed that statutory claims are typically piggybacked onto claims for benefits, and that courts tend to dispose of such tag-along claims without addressing their procedural differences from benefits claims. Among the cases that deal solely with statutory violations, courts have dealt with them as ordinary de novo claims for statutory violations, rather than as claims seeking administrative review. See, e.g., Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108 (10th Cir. 1994) (affirming trial court's evidently de novo factual findings and discretionary imposition of penalties for statutory violations); Hemphill v. Estate of Ryskamp, 619 F. Supp. 2d 954 (E.D. Cal. 2008) (nondisclosure claims adjudicated in a motion for summary judgment, evidently de novo); Porcellini v. Strassheim Printing Co., Inc., 578 F. Supp. 605 (D.C. Pa. 1983) (nondisclosure claims adjudicated in bench trial, evidently de novo).

In the Court's view, de novo review makes most sense. First, ERISA jurisprudence entails administrative review for those claims that challenge actual administrative *decisions*. Here, there is simply no evidence in the record reflecting that Defendant made any decision at all concerning disclosures, let alone whether any such decision was an "abuse of discretion." Indeed, Plaintiff makes no allegations as to any disclosure-related decision Defendant might have made. Second, ERISA benefits cases are framed as administrative reviews in part because ERISA requires plans to provide a process by which benefits denials can be reviewed. See, e.g., Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999) ("an ERISA claimant generally is

required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.  Requiring exhaustion of administrative remedies for such claims gives force to ERISA's explicit requirement that benefit plans covered by ERISA provide internal dispute resolution procedures for participants whose claims for benefits have been denied.") (citations omitted).  The parties have pointed to no analogous internal appeal process of an administrator's failure to make statutory disclosures.  Not surprisingly, Plaintiff has never submitted his lack of notice claims to Defendant, and Defendant therefore never made a formal decision as to them.  This demonstrates that administrative review jurisprudence is not applicable in a case for statutory violations alone.

In this case, however, the practical effect of this distinction – between administrative review and ordinary de novo determination of a statutory claim – may simply be on the <u>evidence</u> the Court can consider, because, if this is not an administrative review, the Court can consider evidence outside of the administrative record.[1]  The distinction will have little impact on the <u>substantive</u> outcome of this case because, even if the administrator made a decision to withhold disclosures in violation of statutory requirements, a decision to violate a statute is not a permissible exercise of discretion.  As such, the statutory violations alleged herein would necessarily constitute abuses of discretion were that standard to apply.

For the foregoing reasons, the Court will not treat this case as an administrative review.  Instead, it will determine de novo whether

---

[1] The Court overrules Defendant's evidentiary objections.

4

Defendant violated the statutory disclosure requirements.[2]

## II. FINDINGS OF FACT[3]

1. Plaintiff Mark Legassie ("Legassie") began working for Raytheon Company ("Raytheon") in November 1987 and remains employed by Raytheon to the present. (AR 79, 103.)[4]

2. After fulfilling the one-year service requirement, Plaintiff became a participant in the Raytheon Company Pension Plan for Salaried Employees ("Plan"). (Id.)

3. Defendant Raytheon Company Employee Benefits Administration Committee ("Defendant") is the Administrator of the Plan. (Def's Opening Brief 1:23-28.)

4. The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001 et seq.

5. Legassie continued to work for Raytheon and accrue pension credit in the Plan until April 1999, when he accepted an offer of full-time employment from the Raytheon business unit, Raytheon STX

---

[2] The Court also notes that a bench trial is appropriate here because Plaintiff is seeking equitable remedies. See Thomas v. Oregon Fruit Products Co., 228 F.3d 991, 996 (9th Cir. 2000) (stating that because ERISA creates only equitable remedies, a jury trial is not required for any claims by participants and beneficiaries seeking remedies under § 1132).

[3] Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

[4] References to "AR" are to the Administrative Record pertaining to Plaintiff Mark Legassie's claim before Defendant for additional pension service credit, and is attached as Exhibits A, B, and C to the Declaration of Ched Miller. References to "Legassie ##" are to the records contained in Exhibit D to the Miller Declaration, and consist of materials such as phone call transcripts and retirement literature unrelated to Plaintiff's claim for additional pension service credit.

("Raytheon STX"). (AR 96.)

6. The Raytheon STX position into which Plaintiff transferred was not eligible for participation in the Plan. (AR 96.)

7. In 2008, Plaintiff requested pension credit for the time period since his transfer in 1999. (AR 96.)

8. Defendant denied Plaintiff's request and informed him that he stopped accruing pension benefits when he transferred into the Raytheon STX position. (AR 96.)[5]

9. Regardless of whether Plaintiff continued to accrue benefits after 1999, he remains a plan participant. (AR 79.)

10. Defendant **did not** send Plaintiff a plan funding notice in 2009; Defendant **did** send Plaintiff a plan funding notice in 2010. (Legassie 39-50, 98, 114.)

11. Defendant **did not** send Plaintiff a summary plan description ("SPD") in June 2006; Defendant **did** send Plaintiff an SPD in August 2009. (Legassie 1.)

12. Defendant sent Plaintiff pension benefit statements as follows: two in June 2006 (AR 1-10), one in June 2008 (AR 37), and two in February 2009 (AR 53-37.)

13. Plaintiff did not receive a pension benefit statement between 1999 and June 2006.

### III. CONCLUSIONS OF LAW

Plaintiff's Complaint alleges that Defendant failed to provide certain notices and/or disclosure documents to him in violation of

---

[5] Plaintiff is not challenging Defendant's denial of additional pension credit.

6

various provisions of ERISA. See Complaint ¶ 7.[6] Specifically, Plaintiff alleges that Defendant violated §§ 1021(f)(1)[7], 1024(b)(1)[8], 1025(a)(1)(B)(i)[9], and 1059(a)(1)(B) and (C)[10]. Plaintiff seeks equitable remedies under § 1132(a)(3)[11], statutory penalties under §§ 1132(a)(1)(A) and (c)(1), and an award of attorney's fees and costs under § 1132(g)(1). Defendant contends that it complied with all disclosure requirements. The Court will address each asserted violation in turn.

**A. Defendant <u>Violated</u> Section 1021(f)(1) in 2009.**

Section 101 requires the administrator to provide a plan funding notice each plan year to each plan participant. ("The administrator of a defined benefit plan . . . shall **for each plan year** provide **a plan funding notice** . . . to each plan participant . . .") As Defendant notes, this requirement applied to the Plan only beginning in 2006 following amendments to the statute. Defendant also contends that such "funding notices were not required to be provided until early 2009 for the 2008 plan year." Defendant points to Legassie 39-50, 98, 114 as funding notices that it provided in 2009 and 2010.

---

[6] All sections referenced herein are in Title 29 of the United States Code. In the following footnotes, the Court will also provide, for convenience, the ERISA code section corresponding to each U.S.C. section.

[7] ERISA § 101(f)(1).

[8] ERISA § 104(b)(1).

[9] ERISA § 105(a)(1)(B)(i).

[10] ERISA § 209(a)(1)(B) & (C).

[11] 29 U.S.C. 1132 is also ERISA § 502.

Legassie 39-50 is a funding notice dated April 29, 2010.  However, Legassie 98 and 114 are not funding notices: they are brochures evidently emailed to employees explaining, among other things, how to access the funding notice online.  Accordingly, Defendant has not pointed to any evidence showing that it disclosed a plan funding notice to Plaintiff in early 2009 for the 2008 plan year – a requirement that Defendant admits it had to satisfy.  The Court therefore finds that Defendant violated § 1021(f)(1) by failing to provide a plan funding notice in 2009 for the 2008 plan year.

**B.   Defendant <u>Did Not Violate</u> Section 1024(b)(1).**

Section 1024(b)(1) requires an administrator to publish a summary plan description to each participant every fifth year when there are plan amendments within such five-year period, or, if there are no amendments within that five year period, every tenth year.[12]

---

[12]  "(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, **a copy of the summary plan description**, and all modifications and changes referred to in section 1022(a)(1) of this title--
. . .
> The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, **every fifth year after** the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, **except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply.** Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title **every tenth year** after the plan becomes subject to this part."

29 USC § 1024(b)(1).

8

 1          Plaintiff says that he received no SPD after he transferred to
 2 Raytheon STX.  Defendant, citing to Legassie 1, contends that it sent
 3 Plaintiff an SPD in June 2006 and in August 2009.  Legassie 1 appears
 4 to be a log recording document requests Plaintiff made to Defendant.
 5 According to Legassie 1, the document sent in 2006 was a retirement
 6 guide, not an SPD.  However, the document sent in 2009 was in fact an
 7 SPD.  Defendant also points to letters to Plaintiff's attorney in 2009
 8 purporting to enclose copies of the SPD.  (AR 98-99.)  Therefore,
 9 based on the above evidence, the Defendant sent an SPD in 2009 but not
10 in 2006.
11          This fact alone, however, is insufficient to prove that Defendant
12 violated § 1024(b)(1) because Plaintiff has not explained either (1)
13 when he last received an SPD, or relatedly, (2) when Defendant was
14 required to issue an SPD.  For example, Plaintiff may have received an
15 SPD in 1999 before he transferred.  If there were no modifications to
16 the plan between 1999 and 2009, then Defendant was only required to
17 provide another SPD 10 years later, in 2009, which Defendant did.
18 Because Plaintiff has not shown or even argued that he was entitled to
19 another SPD between 1999 and 2009, he has not shown that Defendant
20 violated this provision.
21          In any case, even assuming Defendant was required to provide an
22 SPD at some point between 1999 and 2009, the equitable relief that
23 Plaintiff seeks for this violation – retroactive reinstatement in the
24 Plan and a determination of future benefits – would not be
25 appropriate.  Section 1132(a)(3) provides that a "civil action may be
26 brought by a participant or beneficiary . . . to obtain other
27 <u>appropriate</u> equitable relief . . . to redress violations . . ."
28 (emphasis added).  Even if reinstatement is theoretically available,

9

Plaintiff has not explained why it would be "appropriate" equitable relief when (1) he is not claiming that he was wrongly excluded from the Plan in 1999 when he transferred, and (2) he is not asserting that, had he received an SPD in this period, he would have realized he was no longer accruing service credit. Indeed, an SPD is a general document that does not provide individualized information to participants. Receiving an SPD would likely not have revealed to Plaintiff that he was no longer accruing service credit.

For the foregoing reasons, the Court finds that Defendant did not violate § 1024(b)(1). In the alternative, to the extent Defendant may have violated this provision, the reinstatement remedy Plaintiff seeks would not be appropriate.

**C. Defendant Violated Section 1025(a)(1)(B)(i) between April 1999 and June 2006.**

Section 1025(a)(1)(B)(i), in relevant part, requires a plan administrator to "furnish a pension benefit statement . . . a least once every three years to each participant . . . who is employed by the employer at the time the statement is to be furnished." Plaintiff asserts that he has "missed at least three statements." (Pl. Trial Brief 5:5-7). Although Plaintiff does not state this expressly, it appears that he is stating he should have received statements starting every three years after his transfer in 1999, that is, in 2002, 2005, and 2008. Defendant contends that it did not violate this section because (1) "benefit statements were available to all Plan participants upon request and through Raytheon's online benefit site, which Legassie regularly accessed," and (2) Plaintiff was otherwise provided pension benefit statements. (Defs' Resp. Br. 9:19-20.)

10

1    The record indicates that Plaintiff received a number of pension
2 benefit statements: two in June 2006 (AR 1-10), one in June 2008 (AR
3 37), and two in February 2009 (AR 53-37.)[13] Therefore, the Court
4 concludes that Defendant has been in compliance with this section
5 since June 2006. However, there is no evidence that Defendant
6 provided pension benefit statements before then. According to
7 Defendant's own witness, Ched Miller, online access to pension benefit
8 statements was made available to employees like Legassie beginning in
9 September 2006. (Suppl. Miller Decl. 1:18-21.) Thus, even if such
10 access satisfies the statutory disclosure requirement – and it is not
11 clear that it does – it could only do so starting in September 2006
12 and not before. Because Plaintiff denies having received pension
13 benefit statements between 1999 and 2006, and there is no evidence
14 that such statements were provided between 1999 and June 2006, the
15 Court concludes that Defendant provided no such statements in that
16 interval and therefore violated § 1025(a)(1)(B)(I).

**D.  Defendant <u>Did Not Violate</u> Section 1059(a)(1)(B) and (C).**

   Section 1059(a)(1)(B) and (C) requires the administrator to

---

[13] The Court notes that the dates indicated on these statements for "Estimated Pension Earned Through" appear to suggest that Plaintiff was accruing pension benefits after 1999 and through 2018 or 2028, depending upon two different potential retirement dates, even though he was not supposed to be earning service credit as of his transfer in 1999. Although Plaintiff states (Legassie Decl ¶ 3) that the online pension benefit system indicated he was fully vested through December 31, 2008 with 20 years and 1 month of service credit – meaning that he was continuing to earn credit even after his transfer in 1999 – Plaintiff has not made any claims based upon inaccurate information; his only claims are that Defendant failed to provide certain documents. As such, whether the pension benefit statements were misleading is not before the court; only whether they were provided is properly before the court.

11

provide a pension benefit statement "to each employee who is a participant under the plan and who . . . (B) terminates his service with the employer, or (C) has a one-year break in service." Plaintiff contends that Defendant violated this provision in 1999 by failing to provide a pension benefit statement when he transferred to Raytheon STX and stopped accruing service credit.

Although Plaintiff transferred from a participating business unit to a non-participating business unit, he nevertheless continued to be employed by Raytheon. Perhaps Plaintiff could have argued that, for purposes of § 1059, "service" means "creditable service", or that "employer" means "participating business unit," or for some other interpretation requiring the plan to provide a benefit statement when a participant stops accruing credit. However, he has not made such an argument. Accordingly, the Court must conclude that § 1059 does not apply to Plaintiff's transfer because he continued to be employed by Raytheon. Because § 1059 does not apply, Defendant did not violate it.

### III. REMEDIES

**A. Statutory Penalties**

As discussed above, Plaintiff is not entitled to any remedies for his § 1024(b)(1) claim because Defendant did not violate that provision, or, to the extent any violation might have occurred, the equitable remedy Plaintiff seeks - reinstatement - is not an "appropriate" remedy. Nor did Defendant violate § 1059(a)(1)(B) and (C). As a result, the only remedies available to Plaintiff are statutory penalties for Defendant's violations of § 1021(f)(1) (failing to provide a plan funding notice in 2009), and §

1025(a)(1)(B)(i) (failing to provide pension benefit statements between April 1999 and June 2006).

Section 1132(a)(1)(A) authorizes a plan participant to bring a civil action "for relief provided in subsection (c) of this section"; subsection (c)(1) in turn gives the court discretionary authority to impose a $100/day fine on an administrator who "fails to meet the requirements of . . . section 1021(f), or section 1025(a)."[14] As discussed above, Defendant failed to meet the disclosure requirements of §§ 1021(f) and 1025(a) and Defendant is therefore subject to discretionary penalties. However, Plaintiff has neither explained why penalties are warranted, nor specified an amount of penalties.

If Plaintiff wishes to pursue penalties, he must file an Application for ERISA Penalties specifying an <u>appropriate</u> amount of penalties and explaining why such penalties are appropriate. To guide Plaintiff, the Court notes that this is not a case where maximum

---

[14] Section 1132(c)(1) reads, in relevant part:

> Any administrator (A) who fails to meet the requirements of [. . . ] section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary [. . .] may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . .

Neither party addresses whether the remedies Plaintiff seeks under § 1132(c)(1) are available only if Defendant failed to provide the documents following a written request from Plaintiff. The Court reads § 1132(c)(1) as disjunctive: § 1132(c)(1)(A) imposes penalties for failure to comply with mandatory disclosure requirements regardless of whether a participant requested the documents, while § 1132(c)(1)(B) imposes penalties for failure to provide documents only after a participant requested them. The provision applicable here is § 1132(c)(1)(A); therefore, statutory penalties may be triggered without Plaintiff having made a written request.

penalties – or anything close – are warranted. Plaintiff should support whatever position he takes with relevant case law. If Plaintiff fails to do so, the Court may disregard his request.

**B.	Attorneys' Fees**

Section 1132(g) grants the court discretion to award reasonable attorneys' fees to either party. In his Opening Brief, Plaintiff requested an award of fees and addressed the factors set out in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980) to guide the court's discretion. Those five  factors are:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell, 634 F.2d at 453. "No one of the Hummell factors, however, is necessarily decisive, and some may not be pertinent in a given case." Carpenters Southern California Administrative Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984). Defendant did not oppose Plaintiff's request for attorney's fees, and the Court grants the request for fees as unopposed.

The Court also grants the request on its merits, noting that factors 2 and 5 favor an award: certainly Defendant is in a better

position to pay Plaintiff's fees, and covering Plaintiff's fees is especially proper because Plaintiff prevailed on at least some of his claims because he has shown that Defendant violated certain mandatory disclosure requirements. The Court also notes that, even if it ultimately declines to award penalties, that does not detract from the meritorious nature of Plaintiff's underlying claims. The other factors are either irrelevant or neutral. Although Defendant committed several violations, the Court does not detect any bad faith or intent to withhold; indeed, there is no evidence of bad faith in the record. Plaintiff has not established that this case has any significant deterrent value to others, insofar as Defendant's conduct appears to have been, perhaps, negligent. Finally, Plaintiff is not seeking relief that would benefit others or resolve a significant legal question.

Plaintiff is **ORDERED** to submit a further Application for Attorney's Fees and Costs setting forth the reasonable amount of fees and costs he is seeking.

### IV. CONCLUSION

Based on the foregoing, the Court finds as follows:

- Defendant <u>Violated</u> § 1021(f)(1) in 2009.
- Defendant <u>Did Not Violate</u> § 1024(b)(1).
- Defendant <u>Violated</u> § 1025(a)(1)(B)(i) between April 1999 and June 2006.
- Defendant <u>Did Not Violate</u> § 1059(a)(1)(B) and (C).

15

1   Given the above rulings, the Court believes it worthwhile for the
2   parties to attempt to settle the case before submitting additional
3   briefing on penalties and fees.  The Court therefore **ORDERS** the
4   parties to meet and confer about settlement.  The parties are **ORDERED**
5   to file a Joint Report no later than April 18, 2011, to inform the
6   Court about the prospects of settlement.  If the parties have not
7   settled and think settlement is unlikely, then the following briefing
8   schedule will apply:

9   Plaintiff may file an Application for ERISA Penalties for
10  Defendant's violations of § 1021(f)(1) and § 1025(a)(1)(B)(i).  Such
11  Application must not exceed eight pages, and must be filed **no later**
12  **than Monday, April 25, 2011.**  Defendant may submit a response thereto,
13  not to exceed eight pages, **no later than May 9, 2011.**

14  The Court also awards Plaintiff his attorneys' fees and costs.
15  Plaintiff may file an Application for Attorneys' Fees and Costs, not
16  to exceed eight pages, **no later than May 2, 2011.**  Defendant may
17  submit a response thereto, not to exceed eight pages, **no later than**
18  **May 16, 2011.**

20   SO ORDERED.
21  DATED:    April 4, 2011

                                    _____
                                         **AUDREY B. COLLINS**
                                    **CHIEF UNITED STATES DISTRICT JUDGE**